UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| NED WARD, | ) | |
| Institutional ID No. 687009, | ) | |
| SID No. 3723404, | ) | |
| Previous TDCJ No. 516312, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:12-CV-00162-BG |
| PRISCILLA R. ARTIAGA, CO IV, | ) | ECF |
| Montford Unit, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### Procedural Background

Plaintiff Ned Ward, an inmate incarcerated by the Texas Department of Criminal Justice (TDCJ), filed this civil rights action pursuant to 42 U.S.C. § 1983 regarding events that allegedly occurred during his confinement at the John Montford Psychiatric Unit (Montford Unit). Ward names as Defendants TDCJ correctional officers Priscilla R. Artiaga, Nathan L. Alarcon, and Joseph C. Martinez. He claims that these officers assaulted him on August 15, 2011, in violation of his Eighth and Fourteenth Amendment rights.

The United States District Court transferred the case to the undersigned United States Magistrate Judge for further proceedings. The undersigned held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), on December 6, 2012. After reviewing Ward's Complaint, his testimony under oath, and authenticated records from TDCJ, the undersigned found

1

that Ward's Complaint required an answer or other responsive pleading by Defendants.  On January 16, 2013, the court ordered service of process as to Defendants.

Defendants filed an Answer and Jury Demand on February 13, 2013.  In their Answer, Defendants denied Ward's claims and raised defenses of qualified immunity and Eleventh Amendment immunity.  Defendants also filed a Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) (Motion for Judgment on the Pleadings).  In that motion, Defendants request dismissal of Ward's Fourteenth Amendment claim.

The undersigned provided the parties with an opportunity to consent to the jurisdiction of a United States Magistrate Judge.  Ward consented to the jurisdiction of a United States Magistrate Judge, but Defendants did not consent.  Pursuant to the Order assigning the case, the undersigned now files this Report and Recommendation.

### **Findings of Fact**

A.      Ward's Allegations

Ward's testimony at the *Spears* hearing was generally consistent with the allegations in his Complaint.  He claims that Defendants assaulted him as he was returning to his living quarters after breakfast on the morning of August 15, 2011.  He claims that Officer Artiaga struck him several times on the side of his head and shoved him, causing him temporary blindness, severe neck and head pain, and vertigo.  According to Ward, Officer Alarcon then pushed him while he was walking up stairs to his cell, causing Ward to stumble and twist his right ankle, which he had previously injured.  Ward claims that he subsequently asked Officer Martinez for his eyeglasses and elevator pass and that Officer Martinez ordered him to return to his cell.  According to Ward, Officer Alarcon shoved him as he turned to enter his cell, and Officer Martinez simultaneously slammed the cell door

into the right side of his face, causing Ward headaches and blurred vision.  Ward claims that he has experienced additional headaches, severe pain, dizzy spells, and numbness since the alleged assault.

Ward testified that he received no medical treatment for his injuries.  He stated that he complained to morning-shift nurses of his injuries and that they responded by taking photos of his face.

B.    Authenticated TDCJ Records

Authenticated records provided by TDCJ include statements by various officers regarding the incident on August 15, 2011.  In a signed statement prepared on the date of the incident, a sergeant stated that Ward "reported to the pod officers on 1st shift . . . that an officer on . . . nights had slammed his cell door on his face."  The sergeant also reported that a pod nurse "conducted a physical on [Ward] and 2 pictures of his face were taken."  Neither these photos, nor medical records reflecting this examination were included in the records provided by TDCJ.

In a signed statement dated August 20, 2011, Officer Artiaga described the incident in question as follows:

> Offender Ward was standing at the elevator when they cleared the hallway from A3 to B1.  I told him to walk over to A1 by the entrance and to face the wall.  He then walked up to the D space where I was located at and told me he rides the elevator.  I told him I wasn't going to take him due to me not being able to leave A1.  I then asked him for his elevator pass and he could not produce it and he told me he wears a boot and I looked at his feet and he was wearing his tan boots.  I then called A2 to let them know I had their offender on A1 saying he has an elevator pass and doesn't have it on him.  Officer Martinez came down and asked him for his elevator pass and said he didn't have it and then Officer Martinez told him he wasn't going to ride the elevator[;] he was then ordered to go to his pod using the stairs.  At no time during this incident was any type of contact made by me or by Officer Martinez.

3

The records also include an investigation summary prepared by a captain. After interviewing Ward, the accused officers, and various witnesses, the captain reported the following:

> Offender Ward was examined by [a nurse] on August 15, 2011[,] at 0630 hrs and noted slight swelling to his right cheek.
>
> . . .
>
> All officers involved stated that there was no force used during this incident. Two offenders that witnessed the incident also stated that no force was used. Offender Ward did have slight swelling to his right cheek, however due to all staff and offender witnesses denying that force was used I could find no evidence that force was used by staff. The evidence suggest[s] that Offender Ward most likely self-inflicted the injury to his face.

According to authenticated medical records, a physician's assistant reported on August 22, 2011, that Ward had not been compliant with medical treatment for several days in that he had not worn his medical boot as ordered. According to the physician's assistant, a pod nurse had reported that Ward also refused medications, refused work, and used foul language toward security staff. The records show that Ward was found to be psychiatrically stable and discharged from acute psychiatric care eight days later; he was transferred to another TDCJ unit on September 6, 2011.

## Conclusions of Law

A.   Preliminary Screening Standards

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government employee if the court determines that the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A (2013). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). A complaint lacks an arguable basis in law if it is "based on an indisputably

meritless legal theory[.]"  *Id.* at 327.   A complaint lacks an arguable basis in fact if the "factual

contentions are clearly baseless."  *Id.*   A court may base a finding of frivolousness on a plaintiff's

allegations, testimony obtained at a *Spears* hearing, and authenticated prison records.  *See Banuelos*

*v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (stating that dismissals based on frivolousness "can

be based on medical and other prison records if they are adequately identified or authenticated")

(citation and internal quotations omitted); *Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir.

1991) (noting that trial judges "must ascertain what the plaintiff is claiming" to determine whether

an *in forma pauperis* complaint is frivolous and reversing prior finding that evidence adduced at

*Spears* hearing "did not meet adequate indicia of reliability").

B.   Eighth Amendment Claim

The Eighth Amendment "serves as the primary source of substantive protection to convicted

prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified."

*Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).   However, after

incarceration only the "unnecessary and wanton infliction of pain" constitutes cruel and unusual

punishment forbidden by the Eighth Amendment.  *Id.* at 319 (quoting *Ingraham v. Wright*, 430 U.S.

651, 670, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)).   To determine whether force applied by prison

officials constitutes unnecessary and wanton infliction of pain, a court must decide "whether force

was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for

the very purpose of causing harm."  *Id.* at 320–21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033

(2d Cir. 1973)).   "It is obduracy and wantonness, not inadvertence or error in good faith, that

characterize the conduct prohibited" by the Eighth Amendment's prohibition on cruel and unusual

punishment.  *Id.* at 319.

Factors relevant to whether alleged infliction of pain was unnecessary and wanton include

1. the extent of the injury suffered;

2. the need for the application of force;

3. the relationship between the need and the amount of force used;

4. the threat reasonably perceived by the responsible officials; and

5. any efforts made to temper the severity of a forceful response.

*Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

In *Brown v. Lippard*, 472 F.3d 384 (5th Cir. 2006), an inmate alleged that an officer used excessive force against him while attempting to escort him from his cell to another location. *Id.* at 386. According to the inmate, the officer grabbed his arm and stated that the inmate's recreation privileges were revoked. *Id.* The inmate then asked to speak with a supervisor and knelt down on one knee to wait for one to arrive. *Id.* While the inmate was kneeling, the officer "allegedly struck him several times in his back, head and shoulders" and "tried to ratchet his arms—at that point handcuffed behind him—up and over his head." *Id.* After the incident, the inmate sought medical treatment for knee, hand, and shoulder pain; and a nurse noted abrasions on his left knee and shoulder, pain in his right knee, and tenderness around his left thumb. *Id.* The inmate also alleged that the attack exacerbated his prior back problems. *Id.* The Court of Appeals for the Fifth Circuit

held that the alleged attack was not "applied in a good-faith effort to maintain or restore discipline" and was carried out "maliciously and sadistically to cause harm." *Id.* at 387 (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).

Similar to the inmate in *Brown*, Ward has alleged that officers struck him in the face and head while escorting him and then slammed his cell door on the side of his head. Also like the inmate in *Brown*, Ward's allegations and authenticated TDCJ records indicate that the need for the application of force was, at most, minor: Ward claims that he complied with orders to return to his cell, and the records suggest that need for force was so minimal that none was used. Similarly, a nurse noted injuries consistent with Ward's allegations, and Ward claims that the alleged assault exacerbated an existing injury. In view of the similarities between *Brown* and the instant case, Ward has stated an Eighth Amendment violation sufficient to survive screening under 28 U.S.C. §§ 1915(e)(2) and 1915A.

C.      Defendants' Motion for Judgment on the Pleadings

In their Motion for Judgment on the Pleadings, Defendants argue that Ward has failed to state a Fourteenth Amendment claim. Specifically, they assert that Ward's Fourteenth Amendment claim, which is based on the same allegations as his Eighth Amendment claim, does not state a procedural due process claim.

In *Whitley*, an inmate claimed that a prison guard violated the Eighth and Fourteenth Amendments when he shot the inmate during a prison riot in which the inmate was not actively involved. *Whitley*, 475 U.S. at 314–16, 326–27. The U.S. Supreme Court held that the inmate did not state a procedural due process claim but that he "did raise a claim that his substantive rights under the Due Process Clause of the Fourteenth Amendment . . . were infringed by prison officials

when he was shot." *Id.* at 326–27 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 309, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982)) (internal quotations omitted).  The Court then clarified that "the Due Process Clause affords . . . no greater protection than does the Cruel and Unusual Punishments Clause" in the prison context.  *Id.* at 327.

Three years later, the Court reiterated that any "protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 n.10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  Since then, the Court of Appeals for the Fifth Circuit has indicated that the Eighth Amendment "defines the limits of government action" and therefore controls over "the more generalized notion of substantive due process" when a convicted offender claims that prison officials violated the Eighth Amendment. *Austin v. Johnson*, 328 F.3d 204, 210 n.10 (5th Cir. 2003) (quoting *Graham*, 490 U.S. at 395).  In such cases, the court has construed the plaintiff's complaint "as raising a claim under only the Eighth Amendment." *Id.*

In view of the foregoing, Defendants' Motion for Judgment on the Pleadings should be **DENIED** because Ward's failure to state a procedural due process claim does not dispose of the question of whether he has stated a Fourteenth Amendment claim. *Whitley*, 475 U.S. at 326–27. Nevertheless, the district court may elect to construe Ward's Complaint "as raising a claim under only the Eighth Amendment." *Austin*, 328 F.3d at 210 n.10.

D.    Qualified Immunity

Defendants assert qualified immunity in their Answer.  "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly

established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).

"When a defendant asserts qualified immunity, the plaintiff has the burden of proving that it is inapplicable." *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012). "Qualified immunity questions should be resolved 'at the earliest possible stage in litigation.'" *Porter*, 659 F.3d at 445 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). Courts "have discretion to decide which prong of the qualified immunity analysis to address first." *Waganfeald*, 674 F.3d at 484.

A plaintiff need not "fully anticipate the defense" of qualified immunity in his complaint. *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995). "When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7 of the Federal Rules of Civil Procedure. *Id.* at 1433. However, "a district court's discretion not to do so is narrow . . . when greater detail might assist." *Id.* at 1434.

Here, Defendants deny Ward's account of the incident on August 15, 2011. Because there are disputed issues of material fact relevant to Defendants' qualified immunity defense, the case should proceed at this stage. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435–36 (5th Cir. 1993) ("Whether [the defendants] had an objectively reasonable basis [for their conduct] cannot be sorted out without settling on a coherent view of what happened in the first place.").

If the district court requires Ward to file a Rule 7 reply to Ward's assertion of qualified immunity, Ward's reply must "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). If Ward does

9

not meet this heightened pleading standard, the court may rule on a motion to dismiss based on qualified immunity without allowing discovery. *See Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 996 (5th Cir. 1995) (holding that discovery was improper because plaintiff "failed to meet the threshold pleading requirements for either of his claims" with respect to qualified immunity). A motion to dismiss has not been filed in this case.

E.   Eleventh Amendment Immunity

Defendants assert Eleventh Amendment Immunity in their Answer. "The Eleventh Amendment bars suits by private citizens against a state in federal court." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). This bar "also protects state actors in their official capacities." *Id.* Accordingly, to the extent that Ward is suing Defendants in their official capacities, his claims should be dismissed.

## Recommendation

For the foregoing reasons, the undersigned recommends that the district court allow Ward's case to proceed at this stage. The undersigned further recommends that the district court **DENY** Defendants' Motion for Judgment on the Pleadings.

## Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is

found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to timely file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Dated:        April 3, 2013.

NANCY M. KOENIG
United States Magistrate Judge

11